## Baird *versus* Corwin.

1. After the institution of an action of partition, the plaintiff conveyed his interest in the land to persons who were not parties to the proceeding. *Held,* that such conveyance imposed no obligation on the parties to the action to notify the purchasers of the subsequent proceedings in the action of partition. *Lis pendens* was of itself notice.

2. The sale of the land under the proceedings in partition was a conclusive defence to the claim of the grantees of the plaintiff, *pendente lite.*

3. The plaintiff in the partition, previous to the issuing of the writ of partition, executed a mortgage of the land for purchase-money due upon it. The land was subsequently sold under the proceedings in the partition, and the mortgagee claimed and received his portion of the proceeds of sale. He afterwards assigned the balance due and unpaid on the mortgage bonds : it was *held,* that the acceptance of the proceeds of sale of the mortgaged premises was a bar to any claim to the land by the assignees of the mortgage, who claimed it as passing with the transfer of the bonds.

ERROR to the Common Pleas of *Wayne county.*

This was an action of ejectment to May Term, 1850, by James Baird and Cornelius Baird *v.* Richard W. Corwin and William G. Stanton, for two-fifths of a tract of land containing about two hundred acres. The other three-fifths were owned by other persons, who were either parties to the proceeding in partition hereinafter referred to, or else came into court and received their respective shares of the proceeds of the sale under the partition proceedings.

Daniel Burrell had been the owner of two-fifths of the land in question. On the 10th August, 1841, he conveyed the two-fifths to Parks Baird, and on the same day, Parks Baird executed to him a mortgage upon the premises.

[Baird *v.* Corwin.]

On the next day, viz. 11th August, 1841, Parks Baird, thus claiming the two-fifths of the land, instituted an action of partition against David Gwinup and Emily his wife, Richard W. Corwin, Andrew Hendricks and Eliza his wife, Hiram Dunn, and Abraham Dunning. The writ was returned, served on all of the defendants.

On November 30, 1841, Corwin and Gwinup plead *non tenent insimul.* In December, 1843, the plaintiff took a nonsuit as to Dunn and wife, and Dunning, and amended his declaration accordingly, and also as to Emily, wife of Gwinup. The amendment was objected to.

Dec. 6, 1843, a verdict was rendered for the plaintiff. June 4, 1844, a writ *de partitione facienda* was issued; and afterwards, in July, 1844, an *alias* writ was issued.

On 6th June, 1845, Parks Baird conveyed the two-fifths of the land claimed by him to James and Cornelius Baird, who subsequently brought the ejectment.

Notwithstanding this conveyance, an agreement, dated July 7, 1845, was filed, signed by Parks Baird, David Gwinup, and R. W. Corwin, by which they agreed that the sheriff should hold an inquisition on the land without advertising the same for six weeks; the same to be held on the premises on the 19th July. It was dated July 7, 1845. On the 3d February, 1846, a petition for Parks Baird, signed by his counsel and by the counsel of R. W. Corwin and others, was presented, in which it was stated that the inquest had valued the land at $554, and that the parties in interest had declined to accept it. The court was prayed to order its sale by the sheriff, and the court so ordered.

The writ was returned, stating that the premises were sold to R. W. Corwin for $553.

April 30, 1846. Deed of the sheriff to R. W. Corwin for the premises.

Sept. 4, 1846. Auditor's report filed, dated Sept. 2, 1846, which named the parties interested in the land, and made distribution of the proceeds according to the respective interest of each in the land; awarding to Daniel Burrell, the mortgagee of Parks Baird, two-fifths of the money, on the ground that the lien of the mortgage was discharged by the sale.

Counsel appeared before the auditor for Parks Baird, and claimed two-fifths of the money for him.

On December 7, 1846, attorneys for James and Cornelius Baird filed exceptions to the report, claiming that the money appropriated to Daniel Burrell, the mortgagee, should have been awarded to Parks Baird, or to them as grantees of Parks Baird.

December 11, 1846. The exceptions were overruled and the report confirmed.

R. W. Corwin and wife by deed dated August 28, 1846, con-

[Baird *v.* Corwin.]

veyed to William G. Staunton, John S. Hughes, and Henry P. Roberts, for $554, the two hundred and two acres, one-half to Staunton, and one-fourth each to Hughes and Roberts; described as the land purchased by Corwin at the sheriff's sale under the proceedings in partition.

It was observed in the opinion of ELDRED, J. that the parties agreed that after the money raised by the sheriff's sale had been distributed in pursuance of the report of the auditor, Burrel the mortgagee and holder of the bonds accompanying it, transferred all his interest in the balance unpaid on the bonds, to James and Cornelius Baird, the plaintiffs in the ejectment; and the court observed that this transfer carried with it an equitable transfer of the mortgage.

ELDRED, J., charged the jury, *inter alia:*—"Why Parks Baird continued to be the actor in the partition after he had transferred his interest, was not well explained. The explanation made by the counsel, was that he did so with a full understanding with his sons and with their approbation."

"The defendants contend that the plaintiffs attended the sheriff's sale when the property was sold to Corwin, stood by, and made no objection—that they made no objection when the deed was acknowledged in court, and on the 7th December, they employed additional counsel, and filed exceptions to the auditor's report, which were overruled by the court. The exceptions to the report, with the evidence relating to this branch of the case, are referred to the jury. If the jury are satisfied from the evidence that the plaintiffs had full knowledge of these proceedings, and of the part their father took in them, employed counsel to object to the manner the auditor distributed the fund raised by the sale of the property, and made no objection to the acknowledgment of the deed to the purchaser, nor to any of the proceedings, that they are estopped from disputing the regularity of the proceedings in partition, on the ground stated in the 5th and 11th points submitted." The 5th point was, that Mary Burrell had an interest in the property, and should have had notice and been named in the summons, in partition, as a party in interest. The 11th point was that the plaintiffs were not bound to take notice of the suit pending, the legal notice not having been given to them, as prescribed by Act of Assembly of April 11, 1845.

The judge further observed:

"It is well settled that the owner of an unsatisfied mortgage may recover in ejectment by way of enforcing the payment of the moneys due on it. The plaintiffs in this suit stand in relation to the mortgage, precisely in the shoes of Burrell, the mortgagee, and the question is, could he sustain this suit, or an ejectment upon the mortgage? We think he could not under the admitted

[Baird *v.* Corwin.]

state of the evidence in the cause.   Burrell conveyed an undivided two-fifths of the whole lot to the plaintiff's father, and took the mortgage to secure to him the payment of the purchase-money. He had his counsel employed, who appeared before the auditor who distributed the proceeds of the sale of the whole lot, and claimed and received in the distribution two-fifths of the whole purchase-money.   This, so far as he is concerned, is a satisfaction of the mortgage.   With what show of justice could he after this seek to recover in ejectment two-fifths of the land?   He would be receiving satisfaction twice.   We do not decide, nor is it necessary in this case to decide whether the sheriff's sale discharged the lien of the mortgage upon the undivided two-fifths, or whether he was bound to accept the distributive share of two-fifths of the whole proceeds; we only mean to say that after receiving the fruits of the mortgage in the distribution, he cannot resort to an ejectment and recover two-fifths of the land; and the plaintiffs are in no better situation."

It was, *inter alia,* assigned for error:

The court erred in admitting the auditor s report and exceptions thereto; and in instructing the jury that plaintiffs filing exceptions to the same waived all irregularity and illegality in the proceedings in partition.

The court erred in charging the jury that plaintiffs, as vendees of Parks Baird, could not take advantage of irregularities or illegality of the partition.

The court erred in saying to the jury that Parks Baird acted as agent of plaintiffs, after his conveyance to them—there being nothing of the kind in the evidence.

The court erred in taking from the jury a question of fact, as to notice of the lien of the mortgage on the land at the time of sale.

The court erred in instructing the jury that there was no evidence of any money paid by plaintiffs to Parks Baird, as their deed of June 6, 1845, acknowledges the receipt of $540 by Parks Baird from them.

The case was argued by *C. P. Waller,* with whom was *G. G. Waller,* for plaintiffs in error.

It was, *inter alia,* contended : At the commencement of the partition suit, August 11, 1841, the title to the land in question was in Parks Baird, Richard W. Corwin, David Gwinup and Emily his wife, Mary Burrell, William Dexter and Susan his wife, Hiram Dunn, and Elizabeth, wife of Andrew Hendricks.   Under the Act of Assembly of 11th April, 1835, all these persons should have been made parties to the suit; and by the same Act, service of the writ should have been made personally on the parties resi-

[Baird *v.* Corwin.]

dent in the county, and by six weeks' notice in a newspaper to those residing out of the county. This was not done. Had Corwin then any title under the sheriff's deed in partition? Plaintiffs claim that he had not.

June 6, 1845, Parks Baird conveyed his interest in the land to plaintiffs, and on the same day plaintiffs put their deed upon record. Did plaintiffs make themselves, or were they made, parties to the partition? There is nothing in the evidence to show that they did; and plaintiffs claim that as the whole proceeding was illegal, and no notice was given them under the partition, they were not bound to look to it; nor can they be affected by the proceedings, at least after they purchased.

July 7, 1845 (after plaintiffs obtained title), Parks Baird, Richard W. Corwin, and David Gwinup agreed to waive the notice required by the Act of April 11, 1835, and allow the inquisition to be held on 19th July, 1845. Plaintiffs had no notice of the inquisition, and contend that that avoids the subsequent sale to Corwin.

It was denied that the plaintiffs waived any illegality in the partition proceedings, or acquiesced in them by taking exception to the auditor's report. The proceedings in partition were then ended, and no act of theirs could legalize a proceeding which was void *ab initio*. That Corwin took no title by the sheriff's deed, as he knew at the time that the plaintiffs had title to a part of the land, and were not parties to the proceeding. That the principle of *lis pendens* cannot be applied to them, as there was no legal action.

The court declined to hear *W. H. Dimmick*, for defendants in error.

The opinion of the court was delivered March 18, by

Lewis, J.—The purchase, by the plaintiffs in this action, of the interest claimed by Parks Baird, pending the writ of partition in which the latter was plaintiff, did not create any obligation to serve them with notice of the subsequent proceedings. *Lis pendens* is of itself notice, and the principle is applicable to writs of partition as well as to other actions: Welty *v.* Ruffner, 9 *Barr* 224. The sale of the land under the decree in the proceedings in partition is a conclusive defence to the claim founded upon the title derived from Parks Baird *pendente lite*.

The acceptance of the proceeds of the sale, by the owner of the mortgage, is a defence equally effective against any claim to the land founded upon the mortgage.

The other errors assigned are not material to the decision of the case.

Judgment affirmed.